# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:09CR00003-003 |
| v. ) | **OPINION** |
| ) | |
| **WILLIAM LLOYD MUSIC,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy C. Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, by counsel, has filed a Second Amended Motion to Correct Sentence under 28 U.S.C. § 2255 ("§ 2255 Motion"), contending that his sentence for violating 28 U.S.C. § 924(c) is now invalid because the statutory definition of "crime of violence" found in 28 U.S.C. § 924(c)(3)(B) is unconstitutional. The government argues that the defendant's § 2255 Motion is untimely and that he is not entitled to relief because the underlying federal offense of witness tampering qualifies as a "crime of violence" under 28 U.S.C. § 924(c)(3)(A), known as the "force clause." The defendant's § 2255 Motion has been extensively briefed and orally argued and is now ripe for decision. For the reasons that follow, I conclude that the motion is timely but that the defendant is not entitled to relief.

I.

On August 26, 2008, Music and his three codefendants broke into a home, one of a series of residential burglaries they committed that day to steal guns and other valuables. The homeowner, Dave Branscome, drove into the driveway while the break-in was underway. Music fired a handgun towards Branscome's vehicle in order to allow Music and his codefendants to escape and to prevent Branscome from reporting the crime to law enforcement. One of the codefendants reported to investigators that another codefendant had told Music to "cap" Branscome just before Music began firing. Presentence Investigation Report ¶ 16, ECF No. 81.

A grand jury of this court charged Music with six counts. With the benefit of a Plea Agreement, Music pled guilty to Count Six of the Indictment, which charged him with using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). The crime of violence identified was federal witness tampering in violation of 18 U.S.C. § 1512(a), as charged in Count Four. Count Four specifically alleged:

1. In or about October 2008, . . . WILLIAM LLOYD MUSIC, . . . as principal[] and aider[] and abettor[], attempted to kill another person, with intent to:

    a. prevent the attendance and testimony of any person in an official proceeding; and

    b. prevent the communication by any person to a law enforcement officer or judge of the United States of

information relating to the commission or possible commission of a Federal offense.

2. In or about October 2008, . . . WILLIAM LLOYD MUSIC . . . , as principal[] and aider[] and abettor[], used physical force and the threat of physical force and attempted to do so with intent to:

   a. influence, delay and prevent the testimony of a person in an official proceeding;

   b. cause and induce a person to withhold testimony from an official proceeding; and

   c. hinder, delay, and prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission of a Federal offense.

3. All in violation of Title 18, United States Code, Sections 2 and 1512(a).

Indictment 3–4, ECF No. 5.

In exchange for Music's plea of guilty, the government agreed to dismiss as to him Counts One through Five of the Indictment. In the Plea Agreement, the parties stipulated to the applicability of the sentencing guideline for attempted first degree murder. Music also agreed that "if, for any reason, [his] conviction is set aside, . . . the United States may file, by indictment or information, any charges against [him] which were filed and/or could have been filed concerning the matters involved in the instant investigation." Plea Agreement 9, ECF No. 52. On June 2, 2009, I sentenced Music to a term of 188 months imprisonment.

Music petitioned the court to vacate his conviction in 2016 based on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

After initial briefing, the § 2255 Motion was placed in abeyance pending decisions of the Fourth Circuit and Supreme Court in cases involving relevant issues. On January 24, 2019, the Fourth Circuit held that the so-called residual clause of § 924(c) is unconstitutionally vague based on the *Johnson* decision. *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc).

On the defendant's motion, I took the petition out of abeyance, heard oral argument, and permitted supplemental briefing. Music's § 2255 Motion is now ripe for decision.

II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Music bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

Usually, a defendant must file a motion under § 2255 within one year from the date on which his judgment became final. 28 U.S.C. § 2255(f)(1). However, the statute allows for an additional one-year period to run when a defendant relies on a rule of constitutional law newly recognized by the Supreme Court, starting

from "the date on which the right asserted was initially recognized by the Supreme Court." *Id.* § 2255(f)(3).

In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act's ("ACCA") definition of "violent felony" was unconstitutionally vague. The now-void ACCA residual clause defined violent felony to include "any crime punishable by imprisonment for a term exceeding one year . . . that — . . . otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The Supreme Court's decision in *Johnson* announced a new rule of constitutional law that applies retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

Section 924(c)'s definition of "crime of violence" contains a residual clause similar to that struck down in *Johnson*. The statute defines "crime of violence" as "an offense that is a felony" and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subparagraph (A) is known as the force clause, and subparagraph (B) is known as the residual clause. In *Simms*, 914 F.3d at 232, the Fourth Circuit held that the residual clause is void for vagueness based on the

Supreme Court's analysis in *Johnson* and *Sessions v. DiMaya*, 138 S. Ct. 1204, 1223 (2018), which applied *Johnson* to strike down the residual clause contained in 18 U.S.C. § 16(b). The Supreme Court is currently considering the constitutionality of § 924(c)'s residual clause in the case of *United States v. Davis*, No. 18-431, which has been orally argued but not yet decided.

In this case, following the decision in *Simms*, the government asserts two main arguments for why, in its view, the defendant's § 2255 Motion must fail. First, reversing from its earlier position, the government contends that Music's § 2255 Motion is not timely because it is based not on *Johnson* but on *DiMaya*, which was never declared to be retroactive, and the motion was filed before the *DiMaya* decision issued. In support of this argument, the government relies on the Fourth Circuit's decision in *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017), which was rendered before the Supreme Court decided *DiMaya*.

Second, the government contends that regardless of the fate of § 924(c)'s residual clause, Music's conviction and sentence remain valid because his underlying crime of witness tampering, as charged in the Indictment, satisfies the force clause. Music counters that the witness tampering statute does not categorically meet the force clause's definition of "crime of violence" because the most innocent means of violating subsection (a)(1) of the witness tampering statute is through involuntary manslaughter, which can be committed without any physical

force and does not require the use of violent force required by the force clause. Moreover, the most innocent means of violating subsection (a)(2) of the witness tampering statute involves confinement of the victim, which likewise does not require the use of physical force. To these arguments, the government responds that application of the categorical approach is inappropriate in the § 924(c) context. The government further asserts that the witness tampering statute is divisible and the court should look to the facts set forth in the Indictment and determine that the underlying crime that Music admitted committing — attempting to kill a witness — plainly meets the requirements of the force clause.

I will address each of these arguments in turn.

*A. Timeliness.*

Music filed his § 2255 Motion within one year of the Supreme Court's decision in *Johnson*, but in the government's view, *Johnson* did not create the right that Music asserts. In accord with the Fourth Circuit's reasoning in *Brown*, the government contends that because *Johnson* only declared the ACCA's residual clause unconstitutional and said nothing about § 942(c)(3)(B), Music cannot rely on *Johnson* to re-start the one-year statute of limitations for his § 2255 Motion. *See Brown*, 868 F.3d at 299.

The Supreme Court's subsequent decision in *DiMaya*, however, is fatal to *Brown*'s analysis. The court in *DiMaya* made clear that it was simply applying

*Johnson* to another statute that suffered from the same infirmities as the ACCA's residual clause. The Court stated in no uncertain terms, "*Johnson* tells us how to resolve this case." *DiMaya*, 138 S. Ct. at 1223. In reaching its holding, the Court stated that it was "[a]dhering to [its] analysis in *Johnson*." *Id.* at 1210. It indicated that "*Johnson* is a straightforward decision, with equally straightforward application here." *Id.* at 1213. *DiMaya* did not recognize a new rule of constitution law. *Johnson* did that. In *Johnson*, the Court found a "pair of features — the ordinary-case inquiry and a hazy risk threshold — . . . to produce impermissible vagueness." *DiMaya*, 138 S. Ct. at 1218. *DiMaya* merely applied that ruling to the same features in a similar statute.

The Fourth Circuit's reasoning in *Brown* cannot be said to have survived the Supreme Court's decision in *DiMaya*. Several other district courts have reached this conclusion. *See, e.g.*, *Royer v. United States*, 324 F. Supp. 3d 719, 731–32 (E.D. Va. 2018); *Thomas v. United States*, No. 2:11CR58, 2018 WL 3999709 (E.D. Va. Aug. 21, 2018); *see also Cross v. United States*, 892 F.3d 288, 293–94 (7th Cir. 2018) (reasoning that the government's timeliness argument "improperly reads a merits analysis into the limitations period" and defining the scope of the right asserted in the § 2255 petition to be the defendant's "right not to have his sentence *dictated* by the unconstitutionally vague language of the mandatory residual clause," a right declared in *Johnson*). In accord with these decisions, I

find that the right asserted by Music was initially recognized in *Johnson* and that Music timely filed his § 2255 Motion within one year of the issuance of that decision.

### B. Force Clause.

Because the Fourth Circuit has declared § 924(c)'s residual clause unconstitutionally vague, in order for Music's conviction on Count Six to stand, the underlying offense charged in Count Four must qualify as a crime of violence under the force clause. In its pre-*Simms* briefing in this case, the government argued that the categorical approach should not apply in the § 924(c) context and that the court should instead look to the facts of the underlying offense to determine whether Music's predicate offense constitutes a crime of violence. It adhered to this contention at oral argument even after the Fourth Circuit held to the contrary in *Simms*.

The Fourth Circuit's decision in *Simms* forecloses the government's argument. There, the court clearly stated:

> Our analysis begins with the force clause, § 924(c)(3)(A). To determine whether an offense is a crime of violence under that clause, courts use an inquiry known as the "categorical" approach. They look to whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force. *See, e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 7–10, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004) (interpreting materially identical text in 18 U.S.C. § 16(a)); *United States v. McNeal*, 818 F.3d 141, 151–52 (4th Cir. 2016) (interpreting § 924(c)(3)(A)). This approach is "categorical" because courts consider only the crime as defined, not the particular facts in

the case. *See, e.g., McNeal*, 818 F.3d at 152. To be more precise, we will refer to the force clause inquiry as the *elements-based* categorical approach, because it begins and ends with the offense's elements. When a statute defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not "categorically" a crime of violence under the force clause.

*Simms*, 914 F.3d at 233.

I recognize that *Simms* was not unanimous and the Supreme Court may rule differently in *Davis*, but as I previously held, I am bound by the *Simms* decision unless and until it is overturned. Op. & Order, Apr. 5, 2019, ECF No. 142. I therefore must apply the categorical approach in determining whether Music's predicate offense is a crime of violence under the force clause.

The defendant argues that the offenses charged in Count Four are not categorically crimes of violence. First, § 1512(a)(1) is violated when a person "kills or attempts to kill another person" with the intent to accomplish one of the listed outcomes. Neither "kills" nor "attempts to kill" is further defined in the statute, but § 1512(a)(3) reads:

> (3) The punishment for an offense under this subsection is--
>
>> (A) in the case of a killing, the punishment provided in sections 1111 and 1112;
>>
>> (B) in the case of--
>>
>>> (i) an attempt to murder; or
>>>
>>> (ii) the use or attempted use of physical force against any person;

> imprisonment for not more than 30 years; and
>
> (C) in the case of the threat of use of physical force against any person, imprisonment for not more than 20 years.

The defendant argues that this subsection imports the definitions from §§ 1111 and 1112 into § 1512. Section 1112 defines manslaughter as "the unlawful killing of a human being without malice" and includes involuntary manslaughter, which is a killing "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." The Ninth Circuit has held that involuntary manslaughter under § 1112 "requires a mental state of only gross negligence" and therefore encompasses a broader range of conduct than § 924(c)'s definition of "crime of violence." *United States v. Benally*, 843 F.3d 350, 354 (9th Cir. 2016). The defendant thus argues that § 1512(a)(1) is not categorically a crime of violence.

The government responds that the witness tampering statute is divisible. When a statute is divisible, the court must determine which of the enumerated crimes the defendant committed. *Descamps v. United States*, 133 S. Ct. 2276, 2283–84 (2013). The court is authorized to scrutinize a restricted set of materials, including the indictment, plea agreement, and colloquy between judge and defendant to confirm the factual basis for the plea. *Shepard v. United States*, 544

U.S. 13, 26 (2005). This approach, which applies only to divisible statutes, is known as the modified categorical approach.

The government asserts that the court should look to Count Four of the Indictment, which charged Music with attempting to kill but not with actually killing a person. Because one cannot negligently or reckless attempt to kill a person, the government contends that there is no reason to import the involuntary manslaughter definition into Music's predicate offense. According to the government, attempting to kill a person with the intent to affect the outcomes listed in § 1512(a)(1) clearly qualifies as a crime of violence under the force clause.

I agree with the government that § 1512 is a divisible statute. The various ways of committing the crime of witness tampering were obviously meant to be different offenses because the statute sets forth different punishments for them. If a defendant actually kills a witness, the appropriate sentence is controlled by §§ 1111 and 1112, which call for death or life in prison for first-degree murder, a term of years up to life in prison for second-degree murder, up to fifteen years imprisonment for voluntary manslaughter, and up to eight years imprisonment for involuntary manslaughter. Where the defendant commits the crime of witness tampering by attempting to kill a person, the statute provides for a maximum sentence of 30 years imprisonment. The fact that attempting the kill a witness carries a different punishment than killing a witness demonstrates that the statute is

divisible. *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) (noting that statutory alternatives that carry different punishments must be elements rather than simply different means of committing the same offense).

Music was charged with attempting to kill Branscome, and that is the underlying offense he admitted to committing when he pled guilty to Count Six. In the Plea Agreement, the parties also stipulated that the sentencing guideline for attempted murder would apply. The defendant does not suggest that one can attempt to kill a person without intentionally using violent physical force as required by § 924(c)'s force clause. *See Curtis Johnson v. United States*, 559 U.S. 133, 138–40 (2010) (defining "physical force" as used in the ACCA to mean violent force exerted through concrete bodies, "capable of causing physical pain or injury to another person," as opposed to emotional force or mere touching); *McNeal*, 818 F.3d at 155 (stating that use of force requires greater mens rea than recklessness). I find that committing federal witness tampering by attempting to kill a person is categorically a crime of violence under the force clause.

The parties also disagree as to whether the second offense charged in Count Four, witness tampering by use, threat, or attempted use of physical force, satisfies the force clause. The defendant notes that "physical force" as used in the witness tampering statute includes confinement, which does not necessarily require violent force. 18 U.S.C. § 1515(a)(2). I need not resolve this dispute, however, because

applying the modified categorical approach to this divisible statute and considering the sentencing guideline set forth in the Plea Agreement, it is clear that Music agreed that he attempted to kill a witness in violation of § 1512(a)(1). Because I have found that this offense qualifies as a crime of violence under the force clause, Music's sentence remains valid and he is not entitled to relief.

III.

For the foregoing reasons, the § 2255 Motion will be dismissed. A separate Final Order will be entered herewith.

DATED: June 3, 2019

/s/ James P. Jones
United States District Judge